**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:22-cv-60656-AHS**

**RADHEY LAL SINGHAL,**
**NIRMALA SINGHAL,**
**NIRAJ SINGHAL, and**
**VANESSA SINGHAL**

Plaintiffs,

vs.

**UNISON AGREEMENT CORP.,**

Defendant.

_______________________________/

# DEFENDANT UNISON AGREEMENT CORP.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ....................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.........................................................................3

LEGAL STANDARD...............................................................................................................5

LEGAL ARGUMENT...............................................................................................................6

I. PLAINTIFFS' CLAIM FOR COMMON LAW RESCISSION FAILS AS A MATTER OF LAW ........................................................................................................6

A. Plaintiffs' Claim for a Rescission of the Agreements Fails as a Matter of Law........6

B. Plaintiffs' Rescission Claim Fails Because They Do Not Plead Any Other Grounds for Rescission.........................................................................................9

II. PLAINTIFFS' USURY CLAIM FAILS AS A MATTER OF LAW...........................11

III. PLAINTIFFS FAIL TO ALLEGE ANY OF THE ELEMENTS TO MAINTAIN THAT THE OPTION IS UNCONSCIONABLE .........................................................15

IV. PLAINTIFFS' QUIET TITLE CLAIM FAILS AS A MATTER OF LAW .................17

V. PLAINTIFFS FAIL TO ALLEGE THEY ARE ENTITLED TO DECLARATORY RELIEF ..........................................................................................................18

VI. PLAINTIFFS FAIL TO SUPPORT ANY THEORY WARRANTING PUNITIVE DAMAGES.......................................................................................................19

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)....5

*Barnes v. Compass Bank*,
568 F. App'x 743 (11th Cir. 2014)....10

*Barrows v. Bank of Am., NA*,
2014 U.S. Dist. LEXIS 176742 (M.D. Fla. Dec. 23, 2014)....17

*Beach v. Ocwen Federal Bank*,
523 U.S. 410 (1998)....11

*Beausejour Corp., N.V. v. Offshore Dev. Co.*,
802 F.2d 1319 (11th Cir. 1986)....13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....5, 14

*Bergquist v. Anderson-Greenwood Aviation Corp.*,
850 F.2d 1275 (8th Cir. 1988)....12, 13

*Davidson v. Davis*,
59 Fla. 476 (1910)....14

*Eaton v. Onewest Bank, FSB*,
2013 U.S. Dist. LEXIS 196278 (M.D. Fla. Feb. 15, 2013)....7

*Eveillard v. Nationstar Mortg.*,
2015 WL 127893 (S.D. Fla. Jan. 8, 2015)....18

*Ford Motor Credit v. Milhollin*,
444 U.S. 555 (1980)....10

*Foster v. Equitykey Real Est. Invs. L.P.*,
2017 WL 1862527 (N.D. Cal. May 9, 2017)....11, 14

*Graham v. Wells Fargo Bank, N.A.*,
716 F. App'x 831 (11th Cir. 2017)....11

*Griffin Indus. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007)....6

*Halmos v. Bombardier Aero. Corp.*,
404 Fed. Appx. 376, 377 (11th Cir. 2010)....16

*L'Arbalete v. Zaczac*,
474 F. Supp. 2d 1314 (S.D. Fla. 2007) ..............................................................13, 14

*Lane v. Guar. Bank*,
552 F. App'x 934 (11th Cir. 2014) ..........................................................................17

*Longo v. Campus Advantage, Inc.*,
2022 U.S. Dist. LEXIS 36199 (M.D. Fla. Mar. 1, 2022).................................................9

*Lujan v. Defs. Of Wildlife*,
504 U.S. 555 (1992)..................................................................................................18

*Koski v. Carrier Corp.*,
347 F. Supp. 3d 1185 (S.D. Fla. 2017) ....................................................................19

*Milazzo v. First Liberty Ins. Co.*,
2021 U.S. Dist. LEXIS 235718 (M.D. Fla. Dec. 9, 2021)...............................................8

*Navelski v. Int'l Paper Co.*,
244 F. Supp. 3d 1275 (N.D. Fla. 2017)......................................................................16

*Perez v. GEICO Indem.*,
2015 WL 11233076 (S.D. Fla. May 7, 2015) ...............................................................18

*Pilitz v. Bluegreen Corp.*,
2011 U.S. Dist. LEXIS 86042 (M.D. Fla. Aug. 4, 2011) ..............................................15

*PNC Bank, N.A. v. Lucmaur, LLC.*,
2014 U.S. Dist. LEXIS 156709 (M.D. Fla. Oct. 14, 2014) ...........................................19

*Porter v. Ogden, Newell, & Welch*,
241 F.3d 1334 (11th Cir. 2001) ................................................................................19

*Reed v. CRST Van Expedited*,
2017 U.S. Dist. LEXIS 192668 (M.D. Fla. Nov. 20, 2017) ............................................6

*Reyes v. Foreclosure Asset Sales & Transfer P'Ship*,
2014 U.S. Dist. LEXIS 1973985 (S.D. Fla. Mar. 5, 2014)...............................................9

*Rich v. City of Jacksonville*,
2010 U.S. Dist. LEXIS 143973 (M.D. Fla. Mar. 31, 2010).....................................18, 19

*Román v. Spirit Airlines*,
482 F. Supp. 3d 1304 (S.D. Fla. 2020) ...................................................................4, 5

*Saunders v. Duke*,
766 F.3d 1262 (11th Cir. 2014) ..............................................................................4, 5

*Tippett v. Wells Fargo Bank*,
2021 U.S. Dist. LEXIS 106394 (M.D. Fla. June 4, 2021)....17

*Trichell v. Midland Credit Mgmt.*,
964 F.3d 990 (11th Cir. 2020)....18

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009)....5

*W. Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Trust*,
2010 U.S. Dist. LEXIS 5269 (S.D. Fla. Jan. 5, 2010)....7

*W. Coast Roofing & Waterproofing, Inc. v. John Manville, Inc.*,
2006 U.S. Dist. LEXIS 93991 (M.D. Fla. Dec. 29, 2006)....7

**State Cases**

*Allegro at Boynton Beach v. Pearson*,
287 So. 3d 592 (Fla. 4th DCA 2019)....10, 13

*Billiam v. Mobil Corp.*,
710 So. 2d 984 (Fla. 4th DCA 1998)....7

*Bland v. Health Care & Ret. Corp. of Am.*,
927 So. 2d 252 (Fla. 2d DCA 2006)....16

*Cont'l Mortg. Inv'rs v. Sailboat Key*,
395 So. 2d 507 (Fla. 1981)....12

*Craton Entm't, LLC v. Merch. Capital Grp., LLC*,
314 So. 3d 627 (Fla. 3d DCA 2021)....12, 13

*Diversified Enters., Inc. v. West*,
141 So. 2d 27 (Fla. 2d DCA 1962)....13

*Gainesville Health Care Ctr. v. Weston*,
857 So. 2d 278 (Fla. 1st DCA 2003)....15, 16

*Griffin v. Kelly*,
92 So.2d 515 (Fla. 1957)....15

*Hurley v. Slingerland*,
461 So. 2d 282 (Fla. 4th DCA 1985)....13

*Nelson v. Scarritt Motors*,
48 So. 2d 168 (Fla. 1950)....12, 14

*Nolden v. Summit Fin. Corp.*,
244 So. 3d 322 (Fla. 4th DCA 2018)....12, 13

*Old Port Cove Holdings v. Old Port Cove Condo. Ass'n One*,
986 So. 2d 1279 (Fla. 2008)....................10, 13, 17, 19

*Oregrund Ltd. P'sh'p v. Sheive*,
873 So. 2d 451 (Fla. 5th DCA 2004)....................13

*Saralegui v. Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.*,
19 So. 3d 1048 (Fla. 3d DCA 2009)....................10, 12, 13, 14

*Warren v. Leesburg*,
203 So. 2d 522 (Fla. 1967)....................17, 19

*Winter v. Union Air Transp. GMBH*,
650 So. 2d 45 (Fla. 3d DCA 1994)....................16, 18

*Zephyr Haven Health & Rehab Ctr. v. Hardin*,
122 So. 3d 916 (Fla. 2d DCA 2013)....................15

**Federal Statutes and Regulations**

12 C.F.R. § 226.1....................10

12 C.F.R. § 226.2(a)(14)....................10, 11

12 C.F.R. § 1026.2....................10

15 U.S.C. § 1601....................2

15 U.S.C. § 1635(f)....................9

**State Statutes**

Fla. Stat. § 494.001(1)....................12

Fla. Stat. § 687.02(1)....................11

Fla. Stat. § 687.0303(1)....................12

Fla. Stat. § 687.0304....................12

Fla. Stat. § 687.071(d)....................12

Fla. Stat. § 768.72....................19

**Federal Rules**

Fed. R. Civ. P. 9(b)....................7

Fed. R. Civ. P. 12(b)(6)....................1, 4, 5

Fed. R. Civ. P. 15(a) ....................................................................................................4, 5

**Local Rules**

S.D. Fla. L.R. 7.1(c)(4) ....................................................................................................4

**Other Authorities**

Black's Law Dictionary (9th ed. 2009)....................................................................................11

**DEFENDANT UNISON AGREEMENT CORP.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant Unison Agreement Corp. ("Defendant"), through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss all counts of the untimely amended complaint (ECF No. 30) filed by Plaintiffs Radhey Lal Singhal, Nirmala Singhal, Niraj Singhal, and Vanessa Singhal (collectively, "Plaintiffs") for failure to state a claim against Defendant upon which relief can be granted. As grounds, Defendant states:

**INTRODUCTION**

In 2019, Plaintiffs entered a contract with Defendant, a residential equity agreement company that helps homeowners unlock the equity in their real property without incurring debt. Defendant paid Plaintiffs $123,750, and in exchange, Plaintiffs granted Defendant an option to purchase a 60% interest in the future appreciation of the subject property, which can only be exercised under specific events. Defendant risks its initial investment and its economic success is contingent upon property appreciation. The economic result is that if the property appreciates, the value of the option increases and Defendant shares in the appreciation (upon exercising its option). But if the property depreciates, the value of the option decreases and Defendant can lose its entire initial investment.

Now, over three years after entering the arms-length transaction, Plaintiffs have seller's remorse. With the hindsight of a strong real estate market, Plaintiffs filed suit seeking to undo the option for which they were paid $123,750 from Defendant in consideration. However, an option does not fail simply because the optionor would prefer a do-over after seeing the post-option performance of the market for the asset. As explained below, Plaintiffs' five claims are ripe with deficiencies and subject to dismissal under Fed. R. Civ. P. 12(b)(6).

First, Plaintiffs' claim for rescission fails because they do not allege with particularity any

fraud, false representation, or misrepresentations–as they must–and Plaintiffs do not allege that they rescinded their contract or that they provided proper notice to Defendant of their doing so. Moreover, while Plaintiffs dismissed their claim for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, when amending their complaint, to the extent they seek a rescission under TILA, it is barred by TILA's statute of limitation as Plaintiffs initiated this action more than three years after they signed the contract in 2019. Regardless, an "option contract" and "investment plan"–like the agreements at issue here–do not meet the definition of "credit" under TILA, and therefore are not subject to TILA.

Second, for similar reasons, Plaintiffs fail to sufficiently state a claim for usury under Florida law given that the transaction does not meet the definition of a loan. Similar products, including option agreements, are routinely excluded from Florida's usury law.

Third, Plaintiffs fail to allege sufficient facts supporting their claim for unconscionability, as they do not allege the option was either procedurally or substantively unconscionable. Nor can they. Plaintiffs' theory is premised on Defendant's alleged intentional misrepresentation of the nature of the option—yet the documents attached to their amended complaint belie this theory as they clearly disclose that the parties are entering an option—not a loan.

Plaintiffs' remaining claims fail for similar reasons, as argued herein. In sum, Plaintiffs knew exactly what they bargained for when they received $123,750 in consideration for the option. On the other hand, Defendant assumed all the risk of the transaction. None of their investment payment was repayable by Plaintiffs. The future performance of the property is inherently speculative and could have just as easily caused a sizable loss–indeed, that could still be the result before settlement of the option agreement occurs. Despite the parties' clear roles, and the controlling law surrounding option contracts, Plaintiffs assert their unfounded theories against

Defendant. This Court should reject Plaintiffs' last-ditch attempt to avoid their performance under the option and as argued below, should dismiss Plaintiffs' amended complaint with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant helps homeowners unlock the equity in their real property without the use of debt. As explained above, in exchange for a monetary payment by Defendant, the homeowner grants Defendant an option to purchase a percentage interest in the real property, which can only be exercised under specific events, including the sale of the property. Defendant secures the homeowner's performance obligations by recording a security agreement in the county recorder's office.

Here, Plaintiffs allege they own a home located at 1 N. Ocean Blvd., Unit #703, Pompano Beach, Florida 33062 (the "Property"). Am. Compl. ¶ 11. On January 18, 2019, Plaintiffs contracted into Defendant's "home co-investing" product by entering an option contract and corresponding security agreement. *See id*. at ¶¶ 20, 23-32.[1] In exchange for a monetary payment of $123,750 paid by Defendant to Plaintiffs, Plaintiffs granted Defendant an option to purchase an undivided 60% interest in the Property, which can only be exercised under specific events, including the sale of the Property. *See id*. at ¶¶ 22-32; *id.* at ¶¶ 31-32, Ex. A (Memorandum), Ex. B (Mortgage). The economic effect of the agreement is that from the time of Defendant's initial investment until the option exercise, Defendant shares in a change in the value of the property, both up or down. Defendant's product allows homeowners to access their equity without interest, debt, or monthly payments. Defendant secured Plaintiffs' performance obligations under the option agreement by recording a mortgage in the county recorder's office. *Id.* at ¶ 32, Ex. B; *see*

[1] While the agreements were effective January 18, 2019, they were signed by Plaintiffs on February 4, 2019. Am. Compl. ¶¶ 31-32, Ex. A (Memorandum of HomeOwner Agreement ("Memorandum")), Ex. B (HomeOwner Mortgage and Security Agreement ("Mortgage")).

*also* Request for Judicial Notice ("RJN"), Ex. A (Option), Ex. B (Covenant).[2, 3]

In 2021, Plaintiffs contacted Defendant with the "desire[] to pay…$123,750," in satisfaction of any obligations under the Agreements, but Defendant rejected the proposal. *Id.* at ¶¶ 34-36. In other words, they allege that they offered to simply return the money that they originally received over two years earlier.

On February 24, 2022, over three years after entering the Option, Plaintiffs filed suit against Defendant to avoid performance of and to preemptively nullify their contractual obligations under the Agreements. Plaintiffs' original complaint alleged seven claims against Defendant for (1) declaratory relief, (2) usury, (3) quiet title, (4) slander of title, (5) rescission, (6) TILA/Regulation Z, and (7) unconscionable contract. ECF No. 1. On April 21, 2022, Defendant filed its motion to dismiss Plaintiffs' original complaint pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 17. Plaintiffs had until May 5, 2022 to "file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion," but failed to do so. S.D. Fla. L.R. 7.1(c). Plaintiffs also did not file an amended complaint by the May 12, 2022 deadline. Fed. R. Civ. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course within… 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.").

On May 18, 2022, Defendant filed a notice of Plaintiffs' non-opposition to Defendant's motion to dismiss Plaintiffs' original complaint. ECF No. 29. That same day, Plaintiffs filed their

---

[2] The Court can consider documents "attached to a complaint or incorporated in the complaint by reference…on a motion to dismiss under Rule 12(b)(6)." *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) (*citing Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *Román v. Spirit Airlines*, 482 F. Supp. 3d 1304, 1312 (S.D. Fla. 2020). Plaintiffs' amended complaint refers to and relies on the option agreement (the "Option") and covenant agreement (the "Covenant"), which they mistakenly characterize as a "loan." Am. Compl. ¶¶ 23-33, 60, 70. Plaintiffs also attach the Memorandum and Mortgage, both of which expressly refer to and incorporate the Option and Covenant. *Id.* at Exs. A-B. Since Plaintiffs refer to the Option and Covenant, and those documents are central to their claims related to disclosures made in those documents, the Court may take judicial notice of both documents. *Saunders*, 766 F.3d at 1270; *Román*, 482 F. Supp. 3d at 1312.

[3] The Option, Mortgage, Covenant, and Memorandum are collectively referred to as the "Agreements."

untimely amended complaint without the Court's leave or Defendant's written consent. *See* Fed. R. Civ. P. 15(a)(2); ECF No. 30. Plaintiffs' amended complaint dismissed Plaintiffs' TILA and slander of title claims, but otherwise contains identical allegations to Plaintiffs' original complaint. Specifically, Plaintiffs once again seek a rescission of the Agreements and a declaration that Defendant has no interest in the Property. *See* Am. Compl. ¶¶ 53, 71. As set forth below, Plaintiffs cannot state a claim against Defendant and each of their remaining five claims fail as a matter of law.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted). To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

A district court can consider documents "attached to a complaint or incorporated in the complaint by reference…on a motion to dismiss under Rule 12(b)(6)." *Saunders*, 766 F.3d at 1270 (11th Cir. 2014) (*citing Tellabs*, 551 U.S. at 322); *Román*, 482 F. Supp. 3d at 1312 (S.D. Fla. 2020)

("…a district court may consider extrinsic materials on a motion to dismiss if "[1] a plaintiff refers to a document in his complaint, [2] the document is central to his claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss."). A court need not accept as true factual allegations that are contradicted by documents central to the claims. *See Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Reed v. CRST Van Expedited*, 2017 U.S. Dist. LEXIS 192668, at *3 (M.D. Fla. Nov. 20, 2017).

## LEGAL ARGUMENT[4]

### I. PLAINTIFFS' CLAIM FOR COMMON LAW RESCISSION FAILS AS A MATTER OF LAW

Plaintiffs' fourth claim alleges the contract should be rescinded for conduct occurring when the parties executed the Agreements on January 18, 2019. Am. Compl. ¶¶ 31-32, Ex. A-B; *see also* RJN, Exs. A-B. However, Plaintiffs' common law rescission claim fails as a matter of law. Moreover, to the extent Plaintiffs attempt to reassert their dismissed TILA claims as part of their common law claim for rescission, it too fails because any claim is time-barred and regardless, the Agreements are not covered by TILA and Reg Z.

#### A. Plaintiffs' Claim for a Rescission of the Agreements Fails as a Matter of Law

Plaintiffs allege they are entitled to rescission of the Agreements because Defendant "procured the contract through fraud, false representation and misrepresentations…." Am. Compl. ¶¶ 73, 78. However, Plaintiffs' claim fails as a matter of law because Plaintiffs have not–and cannot–allege sufficient facts to state a claim for rescission.

In order to plead a claim for rescission under Florida law, a party must plead six elements: (1) the relationship of the parties; (2) the making of the contract; (3) the existence of fraud, mutual

---

[4] To consolidate arguments, Defendant responds to Plaintiffs' claims in a different order than they are alleged in the amended complaint.

mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) that the party seeking rescission has rescinded the contract and notified the other party of such rescission; (5) if the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) that the moving party has no adequate remedy at law. *Billiam v. Mobil Corp.*, 710 So. 2d 984, 991 (Fla. 4th DCA 1998) (citing *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So. 2d 614, 617 (Fla. 2d DCA 1965)).

First, Plaintiffs have failed to state with particularity the circumstances constituting the existence of fraud, false representation, or misrepresentations. To pursue a rescission claim based on fraud, Plaintiffs must meet the heightened pleadings standard under Fed. R. Civ. P. 9(b). *See Eaton v. Onewest Bank, FSB*, 2013 U.S. Dist. LEXIS 196278, at *6 (M.D. Fla. Feb. 15, 2013) (noting the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to a rescission claim based on fraud). Under Fed. R. Civ. P. 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* In order to satisfy the heightened standards, a complaint must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *W. Coast Life Ins. Co. v. Ruth Secaul 2007-1 Ins. Trust*, 2010 U.S. Dist. LEXIS 5269, at *10 (S.D. Fla. Jan. 5, 2010) (quoting *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also W. Coast Roofing & Waterproofing, Inc. v. John Manville, Inc.*, 2006 U.S. Dist. LEXIS 93991, at *3 (M.D. Fla. Dec. 29, 2006) ("Particularity means that a plaintiff must plead facts as to time, place and substance of

the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them.") (quoting *United States v. McInteer*, 470 F.3d 1350 (11th Cir. 2006) (affirming a motion to dismiss a complaint with prejudice for failing to satisfy the Fed. R. Civ. P. (9)(b) particularity requirement)). Additionally, alleged statements must be "attributed to a specific person," and not to a corporate entity. *Milazzo v. First Liberty Ins. Co.*, 2021 U.S. Dist. LEXIS 235718, at *5 (M.D. Fla. Dec. 9, 2021) (granting motion to dismiss where plaintiff attributed alleged statements to a corporate entity) (citing *Travelers Prop. Cas. Co. of Am. v. Charlotte Pipe & Founder Co.*, 2012 U.S. Dist. LEXIS 38836, at *6 (M.D. Fla. Mar. 22, 2012) ("The allegations of misrepresentation lack sufficient particularity in two respects. The statements are not attributed to a specific person, but instead to corporate entities….[N]ot a single participant is identified by name, title, position, or otherwise.")).

In support of their rescission claim, Plaintiffs allege "Defendant deceived Plaintiffs into believing Plaintiffs were receiving a loan." *See* Am. Compl. ¶ 72. Plaintiffs further allege "Defendant intentionally avoided disclosing to Plaintiffs that Defendant's 'home co-investing' loan program would cause Plaintiffs to relinquish substantial equity in their Property's value." *Id.* at ¶ 73. Plaintiffs, however, entirely fail to allege sufficient facts showing the existence of fraud or other grounds for rescission, as they must. For one, Plaintiffs fail to state precisely what allegedly deceptive statements were made, much less whether they were made orally or in writing. *See id.* at ¶¶ 69-78. For another, even if Plaintiffs did state precisely what alleged misrepresentations Defendant made–which they do not–they fail to allege the time and place of each alleged misrepresentation and the person responsible for making it. *Id.* Notably, Plaintiffs fail to allege a single individual by name, title, position, or otherwise. *Id.* at ¶¶ 69-78. Subsequently, Plaintiffs fail to plead with particularity any facts to satisfy the third element of their rescission claim.

Second, Plaintiffs have failed to satisfy the fourth element of their rescission claim. To properly plead a claim for rescission, a plaintiff must have "rescinded the contract and notified the other party to the contract." *Longo v. Campus Advantage, Inc.*, 2022 U.S. Dist. LEXIS 36199, at *16 (M.D. Fla. Mar. 1, 2022) (granting motion to dismiss where the plaintiff failed to plead allegations that they rescinded the agreement or provided adequate notice of plaintiff's decision to rescind).[5] Here, Plaintiffs do not allege they rescinded the contract and notified Defendant of such rescission. *See* Am. Compl. ¶¶ 69-78. Indeed, Plaintiffs concede as much by alleging they attempted to terminate the Option pursuant to the terms of the Agreements. *See id.* at ¶¶ 34, 76, Ex. C (Demand for Payoff), RJN, Ex. A, 7 (Option). Consequently, Plaintiffs fail to plead an adequate rescission claim.

For these reasons, Plaintiffs' claim for a rescission of the Agreements fails as a matter of law.

### B. Plaintiffs' Rescission Claim Fails Because They Do Not Plead Any Other Grounds for Rescission

To the extent Plaintiffs' rescission claim is based on TILA, it necessarily fails because TILA does not apply to the Agreements. The law is clear that an option is not "credit" and therefore not covered by TILA. Even if it were, the Agreements constitute an "investment plan" and are excluded from the definition of "credit" under TILA.[6]

---

[5] *See also PNC Bank, N.A. v. Lucmaur, LLC*, 2014 U.S. Dist. LEXIS 156709, at *16 (M.D. Fla. Oct. 14, 2014) (granting motion to dismiss where the plaintiffs failed to allege they promptly rescinded a contract); *Reyes v. Foreclosure Asset Sales & Transfer P'ship*, 2014 U.S. Dist. LEXIS 197385, at *13-14 (S.D. Fla. Mar. 5, 2014) (granting motion to dismiss a claim for rescission where the plaintiff failed to provide proper notice of rescission).

[6] TILA, implemented through Reg Z, applies to "credit," which is defined as the right to defer payment of debt. 12 C.F.R § 226.1(e), 226.2(a)(14). In other words, if "credit" exists, then a "debt" must also exist. While Reg Z does not define "debt," the Official Staff Commentary to Reg Z ("Commentary") states "investment plan[s]" and "option contracts" do not constitute "credit." 12 C.F.R. 1026.2, Supp. I cmt. 2(a)(14)(1)(vii), (viii); see *Ford Motor Credit v. Milhollin*, 444 U.S. 555, 565 (1980) (unless demonstrably irrational, Federal Reserve Board staff opinions construing TILA are dispositive). Instructive here, the Commentary excludes an investment plan with a home purchaser where the investor pays a portion of the down payment and of the periodic mortgage payments in return for an ownership interest in the property, and shares in any gain or loss of property value. 12 C.F.R. 1026.2, Supp. I cmt. 2(a)(14)(1)(viii).

Second, notwithstanding the express exclusion of options and investment plans from the definition of "credit" under TILA, option contracts do not require repayment, a feature distinguishing it from credit. *See Old Port Cove Holdings v. Old Port Cove Condo. Ass'n One*, 986 So. 2d 1279, 1285 (Fla. 2008) ("An option contract is a unilateral contract which gives the option holder the right to purchase under the terms and conditions of the option agreement."); *Allegro at Boynton Beach v. Pearson*, 287 So. 3d 592, 600 (Fla. 4th DCA 2019) ("In the context of an option to purchase property, it is not until the option holder manifests to the owner a desire to purchase the property that a bilateral contract exists."); *see Saralegui v. Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.*, 19 So. 3d 1048, 1051 (Fla. 3d DCA 2009) (reasoning a transaction is not indicative of a loan where repayment obligations are not absolute, but rather contingent upon the success of the underlying venture). TILA defines "credit" as the "right to defer payment of debt" or to "incur debt and defer its payment." 12 C.F.R. § 226.2(a)(14). That is, one receives money from another and agrees to pay it back. No such agreement exists here.[7] Thus, Defendant acts only as an investor and risks the loss of its payment and shares only in any gain or loss of property value. Thus, the Option and investment plan memorialized in the Agreements do not constitute "credit" for purposes of TILA and Reg Z.

Third, Federal courts analyzing nearly identical products and fact patterns have held that these products—where a homeowner grants an option to participate in the future performance of

[7] Defendant is not required to exercise the option. *Pearson*, 287 So. 3d at 600. While Defendant paid Plaintiffs $123,750 in consideration for the Option, Defendant has no unconditional right to recover that payment from Plaintiffs. Am. Compl. ¶¶ 32-33, Ex. B at 2(g) (Mortgage) ("Mortgagor shall not be obligated to repay any part of the Unison Investment Payment…"); RJN, Ex. A at 7 (Option) ("The Unison Investment Payment is not a principal amount which Investor is contractually or otherwise entitled to recover at Term or at Option exercise."). Rather, Defendant has an option to participate in the future appreciation in the value of the Property, if any. Am. Compl. ¶¶ 23, 25, Ex. A (Memorandum), RJN, Ex. A, 1(a) (Option) ("[Plaintiffs]…hereby grants to [Defendant]…an option [] to purchase, in the future, an undivided 60.00% interest…in and to [the Property]"). The Agreements contain no absolute repayment obligations and are wholly contingent on the success of the underlying venture. *See Saralegui*, 19 So. 3d at 1051. In other words, if the Property does not appreciate upon an occurrence that enables Defendant to exercise the Option, or if the Property depreciates in value, Defendant realizes no benefit, and actually loses money.

the real property—is "not a loan." *Foster v. Equitykey Real Est. Invs. L.P.*, 2017 WL 1862527, at *4-5 (N.D. Cal. May 9, 2017) (holding that TILA did not apply to an option agreement to participate in the appreciation of the subject property). The same holds true here.

Notwithstanding the above, even if TILA did apply to the Agreements–which it does not–a claim for rescission under TILA would be barred by the three-year statute of limitations. 15 U.S.C. § 1635(f); *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412 (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period."). Based on the plain language of 15 U.S.C. § 1635(f), and the Supreme Court's interpretation of that language in *Beach*, the Eleventh Circuit held that "claims seeking rescission []…must be brought within three years of the date of closing." *Graham v. Wells Fargo Bank, N.A.*, 716 F. App'x 831, 832 (11th Cir. 2017). It is apparent from the face of the amended complaint that Plaintiffs entered into the Agreements on January 18, 2019, yet their lawsuit was not filed until February 24, 2022, more than three years later. Am. Compl. ¶¶ 31-32, Exs. A-B; RJN, Exs. A-B. Accordingly, Plaintiffs' claim for rescission is time-barred and necessarily fails as a result. *Barnes v. Compass Bank*, 568 F. App'x 743, 744 (11th Cir. 2014) (relying on *La Grasta v. First Union Sec.*, 358 F.3d 840, 845 (11th Cir. 2004) (dismissal on statute of limitations grounds is appropriate "if it is apparent from the face of the complaint that the claim is time-barred.")).

For these reasons, to the extent Plaintiffs are seeking a rescission under TILA, it too fails as a matter of law. The Court should accordingly dismiss Plaintiffs' rescission claim with prejudice.

## II. PLAINTIFFS' USURY CLAIM FAILS AS A MATTER OF LAW

Plaintiffs next allege the Agreements charge interest above Florida's usury cap in violation of Florida Statute § 687.02. Am. Compl. ¶¶ 33-37, 59-62. However, Plaintiffs' claim fails on its

face because the concept of usury is inapplicable to the Agreements at issue here.

Florida's usury statute imposes an interest rate cap for "contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt." Fla. Stat. § 687.02(1); *Nolden v. Summit Fin. Corp.*, 244 So. 3d 322, 328 (Fla. 4th DCA 2018) ("The law is well settled that usury can only attach to a loan of money, or to the forbearance of a debt….") (citations omitted). While the statute does not define "loan," Florida generally defines the act of making a loan as an "extension of credit" and a transaction creating repayment obligations. *See*, *e.g*., Fla. Stat. § 687.0303(1) (defining "line of credit" where a "loan[] or advance[] of money may be made available to a debtor…"); *id.* at § 687.071(d) (defining "extension of credit" as making or renewing a loan of money or agreement for forbearance of a loan); *id.* at § 494.001(1) (defining "borrower" as a person obligated to repay).[8] Recent Florida courts have reasoned where a transaction does not contain absolute repayment obligations, it does not meet the definition of a loan. *Craton Entm't, LLC v. Merch. Capital Grp., LLC*, 314 So. 3d 627 (Fla. 3d DCA 2021) (citing cases); *Saralegui*, 19 So. 3d at 1051 (reasoning that a transaction is not indicative of a loan where repayment obligation is not absolute, but rather contingent or dependent upon the success of the underlying venture).

Florida has long recognized exceptions to its usury laws, including "the time-price doctrine," for transactions arising out of a purchase and sale. *Cont'l Mortg. Inv'rs v. Sailboat Key*, 395 So. 2d 507, 509 (Fla. 1981) (citing *Davidson v. Davis*, 59 Fla. 476, 478 (1910) (holding that an option to secure the price of property, even where the price is enhanced, is not usurious)). Courts routinely hold that various types of financing contracts, including option contracts, are not

[8] Fla. Stat. § 687.0304 (defining a "credit agreement" as an agreement to "lend or forbear repayment of money…"); *see also* Black's Law Dictionary (9th ed. 2009) (to lend is to "provide (money) temporarily on condition of repayment"); *Bergquist v. Anderson-Greenwood Aviation Corp*., 850 F.2d 1275, 1277 (8th Cir. 1988) (noting that the "hallmark of a loan" is "an absolute right to repayment of funds advanced").

subject to Florida's general usury statute. *See, e.g.*, *Nelson v. Scarritt Motors*, 48 So. 2d 168, 168 (Fla. 1950) (analyzing Florida authority to hold that a contract that included an option to purchase was "not amenable to the charge of usury"); *Nolden*, 244 So. 3d at 328 (retail installment sales contract not subject to usury); *Craton*, 314 So. 3d at 627 (merchant cash advance not subject to usury).[9] Additionally, contracts where a portion of the investment is at risk or contingent on the success of the underlying venture are also excluded from Florida's usury statute. *L'Arbalete v. Zaczac*, 474 F. Supp. 2d 1314, 1325 (S.D. Fla. 2007) (holding that investments at "substantial risk" constitute an equity investment, not a loan); *Beausejour Corp., N.V. v. Offshore Dev. Co.*, 802 F.2d 1319, 1322 (11th Cir. 1986) ("Florida precedent…establishes that there must be a substantial risk, i.e., a chance of losing one's whole investment, in order for a financing transaction to be exempted from the usury statute."); *see Saralegui*, 19 So. 3d at 1051 (reasoning that transaction is not indicative of a loan where repayment obligation is not absolute, but rather contingent or dependent upon the success of the underlying venture).[10]

As applied here, *first*, the Agreements do not meet the definition of a "loan," and thus are not governed by Florida's usury statute. As explained above, option contracts are distinguished from loans since they do not require repayment. *See Old Port Cove Holdings*, 986 So. 2d at 1285; *Pearson*, 287 So. 3d at 600. When a transaction does not contain absolute repayment obligations, courts reason that it does not meet the definition of a loan. *See Saralegui*, 19 So. 3d at 105; *Bergquist*, 850 F.2d 1275, 1277 (8th Cir. 1988) (noting that the "hallmark of a loan" is "an absolute right to repayment of funds advanced"). Here, Defendant has no unconditional right to recover that

[9] *But see Oregrund Ltd. P'ship v. Sheive*, 873 So. 2d 451, 459 (Fla. 5th DCA 2004).

[10] *Hurley v. Slingerland*, 461 So. 2d 282, 284 (Fla. 4th DCA 1985) (holding that where "a portion of appellee's investment was at risk . . . the transaction was not usurious"); *Diversified Enters., Inc. v. West*, 141 So. 2d 27, 30 (Fla. 2d DCA 1962) ("When the principal sum lent or any part of it is placed in hazard, the lender may lawfully require, in return for the risk, as large a sum as may be reasonable, provided it is done in good faith.").

initial payment made to Plaintiffs. *See* Am. Compl. ¶¶ 32-33, Ex. B at 2(g) (Mortgage) ("Mortgagor shall not be obligated to repay any part of the Unison Investment Payment…"); RJN, Ex. A at 7 (Option) ("The Unison Investment Payment is not a principal amount which Investor is contractually or otherwise entitled to recover at Term or at Option exercise."). In addition, Plaintiffs have not, and cannot, allege the Agreements contain any absolute repayment obligations, as they must. *See Saralegui*, 19 So. 3d at 1051; *Foster*, 2017 WL 1862527, at *4. While Plaintiffs conclude that Defendant's option was a "loan," they provide no support for the contention and their threadbare allegations must be dismissed. *Twombly*, 550 U.S. at 555.

*Second*, even if Plaintiffs had sufficiently alleged the Agreements constitute a loan under Florida law, Florida routinely excludes these types of transactions from its usury statute. For one, Florida has long excluded transactions that arise out of a purchase and sale—including the purchase of an option. *Nelson*, 48 So. 2d at 168 (holding that a contract including an option to purchase is "not amenable to the charge of usury"); *Davidson*, 59 Fla. at 478 (holding an option to secure the price of property, even where the price is enhanced, is not usurious). Moreover, Defendant's investment remains at risk and its success is entirely contingent on the future, albeit speculative, appreciation of the Property. As explained, if the Property does not appreciate in value upon an occurrence that enables Defendant to exercise the Option, or if the Property depreciates, Defendant realizes no benefit, and actually loses money. *See Foster*, 2017 WL 1862527, at *5 (holding that a similar transaction was "not a loan"). Florida courts routinely exclude similar transactions that put the investment at risk. *Zaczac*, 474 F. Supp. 2d at 1325; *Beausejour*, 802 F.2d at 1322; *Saralegui*, 19 So. 3d at 1051. Since Defendant acts only as an investor, risks the loss of its initial payment, and shares only in any gain or loss of property value, the Agreements are excluded from Florida's usury statute.

*Third*, even when analyzing the substance of the Agreements, Plaintiffs' allegations confirm their intent was to enter an option—not a loan. The controlling factor in arriving at the substance of a transaction is the parties' intent. *See Griffin v. Kelly*, 92 So. 2d 515 (Fla. 1957). Plaintiffs' allegations, along with the judicially noticed documents, confirm they intended to enter an option. Am. Compl. ¶ 32, Ex. A ("…Owner grants and conveys to Benefited Party the option to purchase an undivided percentage interest in that certain real property[.]"); RJN, Ex. A, 1(a) (Option). For these reasons, Plaintiffs cannot state a viable usury claim as a matter of law.

**III. PLAINTIFFS FAIL TO ALLEGE ANY OF THE ELEMENTS TO MAINTAIN THAT THE OPTION IS UNCONSCIONABLE**

A contract is unconscionable when it is both substantively and procedurally unconscionable. *Zephyr Haven Health & Rehab Ctr. v. Hardin*, 122 So. 3d 916 (Fla. 2d DCA 2013). A contract is substantively unconscionable if its provisions are "so 'outrageously unfair' as to 'shock the judicial conscience.'" *Gainesville Health Care Ctr. v. Weston*, 857 So. 2d 278, 284-85 (Fla. 1st DCA 2003). A substantively unconscionable contract is one that "no man in his senses and not under delusion would make on one hand, and [that] no honest and fair man would accept on the other." *Pilitz v. Bluegreen Corp.*, 2011 U.S. Dist. LEXIS 86042, at *3 (M.D. Fla. Aug. 4, 2011) (citations omitted). Plaintiffs appear to focus on the theory that the appraisal of the Property was "under-market." Compl. ¶ 82. Yet, Plaintiffs fail to allege with any specificity how the contract with Defendant was substantively unconscionable, as they allege no facts showing the appraisal of the Property was so unreasonable as to "shock the judicial conscience," which is understandable given that property appraisals are common in the industry. It is also important to note that nothing is currently due to Defendant and how much, if anything, Defendant will receive on its investment is speculative–it depends on market conditions and Plaintiffs control the events that would allow Defendant to exercise its option. Instead, Plaintiffs' issue with the Agreements appears solely

focused on procedural unconscionability.

Procedural unconscionability may arise if the circumstances surrounding a transaction indicate that the party had no meaningful choice at the time of contracting. *Gainesville Health Care Ctr*., 857 So. 2d at 284. Here, Plaintiffs allege Defendant's conduct was unconscionable when they used the fact that Plaintiffs were "unsophisticated" and "desperately in need of money," did not suggest retaining outside counsel, "intentionally misrepresented…that Defendant was entitled to a percentage of Plaintiffs' ownership interest" and that the contract was "unilaterally drafted by Defendant." Am. Compl. ¶¶ 81-84, 86-87. None of these unsupported allegations sufficiently allege procedural unconscionability. Plaintiffs do not allege they had no meaningful choice at the time of contracting with Defendant, no opportunity to bargain, or no opportunity to understand the terms of their contract or any independent appraisal. *Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006) (affirming a ruling that no procedural unconscionability existed where an unsophisticated party had a meaningful opportunity to review a contract and obtain further guidance before signing). Nor can they, as Plaintiff Niraj Singhal is a sophisticated real estate broker. *See* RJN, Ex. C ("Real Estate Broker Registration").[11] In any event, the Agreements entirely contradict Plaintiffs' theory that the Option and the granted percentage share of the future performance of the Property was not disclosed. Am. Compl. ¶ 31, Ex. A (Memorandum), RJN, Ex. A, 1(a) (Option) ("[Plaintiffs]…hereby grants to [Defendant]…an option [] to purchase, in the future, an undivided 60.00% interest…in and to [the Property]").

[11] The Court can consider documents that contain facts "capable of accurate and ready determination" by reliable sources, including "matters of public record." *Halmos v. Bombardier Aero. Corp.*, 404 Fed. Appx. 376, 377 (11th Cir. 2010). Because Plaintiff Niraj Singhal's Real Estate Broker Registration is publicly available on an official governmental administrative authority website, the Court may take judicial notice of the document. *See Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1300 n.5 (N.D. Fla. 2017) ("Also, it is not uncommon for courts to take judicial notice of factual information found on official governmental agency websites.").

Plaintiffs—who admit they signed the Agreements—are charged with knowing and understanding the contents of documents they knowingly sign. *Winter v. Union Air Transp. GMBH*, 650 So. 2d 45, 46 (Fla. 3d DCA1994) (the "failure to read the [contract]…prior to signing it is not a defense against its application"). Without more, Plaintiffs fail to allege facts supporting procedural unconscionability and their fifth claim fails as a matter of law.

## IV. PLAINTIFFS' QUIET TITLE CLAIM FAILS AS A MATTER OF LAW

To state a quiet title claim, a plaintiff must establish (1) plaintiff's valid title; (2) the manner in which plaintiff obtained the title; (3) the basis upon which defendant asserts an interest on the title; and (4) the invalidity of defendant's interest in the property. *Barrows v. Bank of Am., NA*, 2014 U.S. Dist. LEXIS 176742, at *2 (M.D. Fla. Dec. 23, 2014). "A claim for quiet title in Florida 'must not only show title in the plaintiff to the lands in controversy, but also that a cloud exists, before relief can be given against it.'" *Lane v. Guar. Bank,* 552 F. App'x 934, 936 (11th Cir. 2014) (quoting *Stark v. Frayer*, 67 So. 2d 237, 239 (Fla. 1953)). Plaintiffs allege they are "the equitable owners of the Property," and that "Defendant claims an interest in the Property adverse to Plaintiffs," by obtaining an "ownership interest in a homeowner's property[.]" Am. Compl. ¶¶ 26, 65-67. However, Plaintiffs cannot allege that Defendant "asserts an interest on the title" or the "invalidity of the defendant's interest," both of which are fatal to their claim.

First, Florida courts hold that option contracts do *not* create interests in land. *Old Port Cove Holdings*, 986 So. 2d at 1287 (Fla. 2008) ("Florida law has consistently held that an option does not create an interest in land."); *Warren v. Leesburg*, 203 So. 2d 522, 526 (Fla. 1967) (stating that an option does not vest the holder with an interest in the land, but is "strictly a contractual right, not a property right[.]"). Since Plaintiffs do not allege Defendant exercised its option, Plaintiffs cannot assert that Defendant holds any ownership interest in the Property or that Defendant's

purported interest is adverse to Plaintiffs. Thus, Plaintiffs cannot allege Defendant holds an interest that can be quieted. Their quiet title claim necessarily fails as a result and must be dismissed with prejudice.

Second, even if Plaintiffs sufficiently alleged that Defendant asserts an interest in the Property, the Option and Mortgage, which Plaintiffs admittedly voluntarily entered into, are precisely what Plaintiffs agreed to when they executed the Agreements in 2019. In other words, Plaintiffs cannot show that Defendant's interest is invalid when they voluntarily signed the Agreements and retained all the benefits from the Agreements. *See Tippett v. Wells Fargo Bank*, 2021 U.S. Dist. LEXIS 106394, at *16 (M.D. Fla. June 4, 2021); Am. Compl. ¶¶ 31-32 (conceding Plaintiffs signed the Agreements).[12] Accordingly, Plaintiffs' quiet title claim should be dismissed.

## V. PLAINTIFFS FAIL TO ALLEGE THEY ARE ENTITLED TO DECLARATORY RELIEF

Plaintiffs next seek a judicial determination that they are the sole owners of the Property and further seek "to quiet title" to the Property. Am. Compl. ¶¶ 41-58. However, Plaintiffs' claim must be dismissed for lack of Article III standing. Even if they had sufficiently alleged standing, Plaintiffs' claim merely duplicates their other deficient claims and thus fails as a matter of law.

Article III requires a plaintiff to establish three elements to satisfy standing. First, the plaintiff must have suffered an actual, concrete, and particularized injury in fact; second, there must be a causal connection between the injury and the complained-of conduct; and third, it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992); *see also Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1000 (11th Cir. 2020). In an action for declaratory relief, a plaintiff must also show a substantial likelihood of

[12] It is well-established that the failure to review and read a document is not a defense against its application. *Winter*, 650 So. 2d at 46 (the "failure to read the [contract]…prior to signing it is not a defense against its application").

some future injury. *Perez v. GEICO Indem.*, 2015 WL 11233076, at *3 (S.D. Fla. May 7, 2015). A plaintiff must establish "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Rich v. City of Jacksonville*, 2010 U.S. Dist. LEXIS 143973, at *15 (M.D. Fla. Mar. 31, 2010). Moreover, declaratory relief is a "procedural device which depends on an underlying substantive cause of action and cannot stand on its own." *Eveillard v. Nationstar Mortg.*, 2015 WL 127893, at *9 (S.D. Fla. Jan. 8, 2015).

Here, Plaintiffs' declaratory relief claim seeks adjudication of the parties' rights to the Property, yet Florida case law is clear that options do not create real property interests. *Old Port Cove Holdings*, 986 So. 2d at 1287; *Leesburg*, 203 So. 2d at 526. Plaintiffs have not—and cannot—allege Defendant exercised the Option. As a result, Plaintiffs cannot allege that Defendant has an interest in the Property that is subject to any actual dispute. Instead, Plaintiffs seek judicial determination of a *potential* injury stemming from the speculative future exercise of the Option. Yet, this is insufficient to establish a real and immediate injury under Article III. *See Rich*, 2010 U.S. Dist. LEXIS 143973, at *15. Additionally, Plaintiffs' declaratory relief claim merely repeats prior theories, including their deficient claim for quiet title. Since each of Plaintiffs' substantive claims are subject to dismissal, their claim for declaratory relief must also be dismissed. *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1199 (S.D. Fla. 2017) (dismissing declaratory relief claim where all substantive claims were dismissed).

## VI. PLAINTIFFS FAIL TO SUPPORT ANY THEORY WARRANTING PUNITIVE DAMAGES

Plaintiffs' amended complaint also includes notice that they intend to move the Court for leave to plead for punitive damages pursuant to Fla Stat. § 768.72. Am. Compl., p. 11. Plaintiffs' request should be denied, as they fail to allege anything other than conclusory allegations to support punitive damages or that they are otherwise entitled to such relief. *See Porter v. Ogden*,

*Newell, & Welch*, 241 F.3d 1334, 1340-41 (11th Cir. 2001) ("Under Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages. Instead, a plaintiff must plead specific acts committed by a defendant.").

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss should be granted and Plaintiffs' amended complaint dismissed in its entirety with prejudice.

Dated: June 1, 2022

Respectfully submitted,

**Tripp Scott P.A.**

By: */s/ Henny L. Shomar*______________
Henny L. Shomar, Esq.
Tripp Scott P.A.
110 SE Sixth Street, 15th Floor
Fort Lauderdale, Florida 33301
(954) 525-7500
HLS@trippscott.com

*Attorney for Defendant Unison Agreement Corp.*